will begin with Sant v. Stephens. Good afternoon, your honors. My name is Stephen Selzenfeld. I am the attorney for the plaintiff slash appellant, Kathleen and Dennis Sant. And this is the court on behalf of the appellees. It is positive there are two focal considerations for this court. First, are the factors alleged by the stand sufficiently egregious for this court to conclude that if they were shown to be in fact true, that a reasonable trier of fact could invoke the continuing violation doctrine as articulated by the Supreme Court and National Railroad Passenger Court versus Morgan, 536 U.S. 101-117-2002 and its progeny, which includes the Second Circuit's holding in Shomo v. City of New York, 579 F. 3rd, 176-181, the Second Circuit, of course, 2009. Second question is the court just considers that the facts that are alleged by the Sant suggest that counsel more adequately presented allegations on behalf of the Sant, particularly as those relate to the 2008 to 2009. Mr. Felsenfeld, Mr. Felsenfeld. Yes. The critical date is three years before the filing. So the critical date is October 29th, 2015. Would you agree with that? No, it's a continuing violation, Your Honor. And so that date is irrelevant. And if the court does not agree that it's a continuing violation, then I would have to agree with the defendant and the court below, which I do not, that the statute of limitations can be argued to have run. I do not believe that is a correct interpretation. I believe that the facts as such are correct. So your client requested a variance, right? And the town still hasn't ruled on the variance, right? Exactly, exactly. That's actually my- So that might be something that's still happening, but I tell you, I have this case from the state court, and it says that they can't act on your request for a variance until you submit an application to the zoning board. Is that right? Have you done that? Does that actually prevent the town from acting? No, the problem with the town is that they directed the stance to file in the plan. If it turns out at the end of the day, and I believe that's a question for summary judgment, if it turns out at the end of the day that the arguments of the town are correct, that might be a basis pursued to which they could achieve summary judgment. But as far as for the purposes of this motion- Well, I don't know. That's just about the legal requirements as to whether you've actually made an application for a variance. So the state court tells me- Just let me finish for a second, please. So the state court tells me that you can't apply for a variance until you've also applied at the planning board, and so you've also applied at the zoning board. And I guess even in the receipt for your 2009 request for a variance, it says that you will also need to be referred to the zoning board of appeals for various variances. And I'm asking you just a legal question, which is, does your- I guess a factual and legal question. First, a factual question, which is, have you actually applied to the zoning board? And second, a legal question, which is, is the state court right that until you do so, the town can't act on your application for a variance? What I would say to that is this. I don't know that there's a request within the zoning board or not, but the direction of the town was, if you wish to apply for the variance, you apply here. And if they were, in a technical sense, misdirected to the wrong board, does it then fall upon the individuals versus the municipality to have properly advised the stance of where to file? I mean, it's not just the town. There's a judgment from the Supreme Court of the state of New York that was entered in April 2018 that said that your claim isn't right because you haven't yet applied to the zoning board. So it's not about just the town telling you. The court has also told you that. So after your clients got this judgment, did you go ahead and apply to the zoning board? And if not, why not? If there was a, hold on a second. The direction of the court. I might index the page for the order from the court. Okay, I'm sorry. I'm sorry I don't know how to get to the right page. The decision of the court, they said that the holding of the court was the stance of not applied for any zoning variance in the town for destruction of property or exhausted all administrative revenue. This matter is not yet right for judicial review of an administrative termination. There was nothing put into the record by the town that there was a filing for the application process and that the application was ever acted upon. Does that mean? Mr. Felsenfeld, Mr. Felsenfeld, Mr. Felsenfeld. The complaint alleges an application, a formal application for a zoning variance. Where was that filed? Where was that filed? With whom? We believe, again, I don't have a copy of the paperwork. What our understanding was is that when we filed with the planning board, we were of the belief based upon the directions of the town that that was where to do this process. There was never an advisement to them by the members of the town when they were filing that they needed to make a dual application of some nature. It was all presented through the planning board. Yeah, but I'm just asking you as the attorney now who's trying to say that the town has violated your client's rights. Is the town in this litigation in 2018 said, no, in fact, it needs to be filed at both the planning board and the zoning board. And do you have anything that you can say to explain to us why the town is mistaken about that? I think I've provided what I can. I can't make up a story that I know or don't know to not be true otherwise. As far as I know, I filed another application in 2018. Okay, and then the town also said they couldn't act on your variance request until the county approved the septic system on your client's property. Is that right? Is the town correct? No, that's inaccurate. That's inaccurate. And as I pointed out and was not noted by the court below. You have one minute, one minute, by the way. One minute. I provide a specific example of where the town has provided people who had properties that did not comply on any level. And they gave them variances, and including a shop doing a painting on site, et cetera. And those were applications that were enacted upon, and they didn't seem to need the nicety of them getting the proper permitting, because it's impossible for them to get that kind of permitting, having a paint shop on the premises in that neighborhood. So that's the underscore. Meanwhile, the court also should note that the same actions that were taken pre-application in 2008-2009, I think very important to realize that they continued in the 2018. Once the Article 78 action had ended, they now began, once again, doing the same exact sets of things that they had done in 2008-2009, just placing more pressure, showing them the continuing violation. They continued to do the same thing to harass and to harm the Stanton. In fact, at that point, the Stanton were in such a position where they were exhausted. Yeah, I have a question about that, I guess. So one thing that happened later was, there's this allegation that the town came on to the Stanton property eight times in March 2018 to measure sit-backs. Because that's eight times that they saw, yes. So why were they doing that? Like, why did they say that they had to enter the property to do that? They didn't, they just did. They just came by. Well, measuring sit-backs for what purpose? For evaluating the request for a variance or for some other purpose? They didn't provide that sort of information. They just came on and they said, we're doing some measurements. And they were doing the same sorts of things back in 2008-2009. And when the Stanton went down and complained about the fact that this is what was going on, they ultimately were directed to file an application to obtain the variance. And then they spent years trying to get the variance and it was made clear when, instead of issuing them any sort of denial of the applications they'd filed, they brought them to the court and said that you're in violation. Well, you know, you're, what are you gonna do to that? You never acted. Do something. If you're gonna deny the application, okay, but deny it, then you have a peelable paper. Why don't you, you have some time for rebuttal. Let's hear from the other side. Thank you so much, Your Honor. Good afternoon, Your Honor. Stephen Gabba for the appellees. The plaintiff's complaint in this case essentially states three causes of action. The cause of action for First Amendment retaliation under 1983, 1983 claim for denial of due process, and the 1983 equal protection claim based on alleged selective enforcement. Now, in this jurisdiction, the statute of limitations under 1983 claim is three years. And as the court has noted, the operative date in our case is October 29, 2016. Yeah, okay, that's fair enough that the statute of limitations is for three years. But there are a couple things that seem to be either ongoing or within the statute of limitations. So one is what I just asked the other counsel about, which is this idea that the town entered the Sam's property eight times in March, 2018 to measure setbacks. Now that is certainly within three years of the complaint being filed. So why was the town doing that? Frankly, the town doesn't have records of doing that. That's just something that the plaintiffs have alleged. They haven't alleged any context. The complaint doesn't give any information as to what allegedly occurred and they're opposing papers for the district court. Didn't flesh out the purported claim at all. To the extent that the plaintiffs- We have to assume that those facts are true though, right? At this date. I'm sorry, go ahead, Your Honor, I apologize. I was just gonna ask is, don't we have to assume that that factual allegation is true that the town officials entered eight times to measure setbacks? Does that change anything in terms of the analysis? No, it does not, Your Honor. And the reason for that is that in regard to the due process claim, the allegation that the town entered the property is absolutely irrelevant. In regard to the equal protection claim, likewise, it's irrelevant. What about to the statute of limitations analysis? Is it relevant? Because it's within the three year period. In regard to the statute of limitations, the only claim that it would be relevant to is the First Amendment retaliation claim. And even that, it wouldn't be relevant against Stephen because Stephen's involvement in the case completely ended in 2014 when he left the prosecution. No allegation that Stephen's had anything to do with people going on the plaintiff's property. So the question left at that point is whether allegations- Well, they do have that allegation, right? Because they think that the town is retaliating against them on behalf of Stephen's because they took offense at Mr. Sand's criticism of Stephen. So they have that allegation. It wasn't just- But anyway, so you're saying that it didn't happen, which seems like a dispute over the facts, but let's say that I'm assuming that it's true. And maybe I could take that as an individualized occurrence that the town, he says the town is gratuitously entering their property for no reason. I mean, is there, the town doesn't have any explanation for why it might be doing this? But it does not appear in the record, Your Honor. And I can't go into it because the little I know from the town is that they don't have records on it. So if they can't explain why they did something, they don't have records that they allegedly did. All right, can I ask to just move on to the other thing, which is the request for a variance. So it's true that the Sands requested a variance with the planning board and the town has yet to act on the request, right? All right, there's a lot of confusion there as far as the terms. There are three permits that would have been required for the accessory apartment. First one would have been a sewer permit, septic tank term permit from County Department of Health. The second would have been a special use permit from the planning board. And in order to get the special use permit from the planning board, they would need the third approval, which is variances from the VBA. After much toing and froing with the County Department of Health and never getting approvals from them, they nevertheless submitted an application to the planning board for a special use permit. When they did that, it was noted that they would need a variance from the Zoning Board of Appeals. They never applied to the Zoning Board of Appeals for a variance. So the planning board, I understand in order to have the use, you need approval of both bodies, but is the planning board unable to act until the Zoning Board acts? Like it has to be the Zoning Board acts first? That's correct, because they can't grant a special use permit if the property doesn't comply with or have variances from the bulk requirements of the town code. So they'd have to first get the county approval, which they never got. Then they would apply to the planning board and simultaneously to the Zoning Board of Appeals. The planning board would acknowledge receipt of their application, but not act on it, because they couldn't act on it until they got the variance. They never applied for the variance. But if I could return to the issue of the visits to the property, I think if we could frame the issue this way, the question is, whether allegations in a complaint that someone criticized the town or the supervisor and the town attorney between 2007 and 2011, there's no allegations criticism after 2011, would plausibly state a cause of action for First Amendment retaliation based on naked allegations that the town officials entered the property to take setback measurements eight times. I don't think that you could plausibly say that that plausibly states First Amendment retaliation cause of action. So statute of limitations aside, there's no cause of action there based on mere allegations that they criticized the supervisor and the town attorney eight years prior to the town going on the property and taking some measurements. If it's not an adverse action against them to take measurements, there's no connection, or didn't even allege this kind of retaliation, it's just so that it happened. But I don't think even if you could find that was within the three year period, that it would save the First Amendment retaliation claim in this case. And as I noted, the equal protection claim and the due process claim fail not only on the merits, but also is being time barred. Should I address the continuing violation claim with my main time or? Yes. Well, I have a question. Actually, before we get to that, can I just, so I take it that for about 20 years, the Sands brother or Mr. Sands brother-in-law lived in this barn and the town took no action. What is it that prompted the town to change their attitude towards the property status in 2008? Well, actually what happened was the building inspector was closing out old building permits. And when you get a building permit in order to finalize the work, you have to go and get a certificate of occupancy, show that the work was done and the work was completed in accordance with the building permit. The Sands took out a building permit for a pole bar and never came in and got the certificate of occupancy. So what happened is in 2008, a letter goes out from the building inspector saying, hey, you never got a CO and they never come in and do anything. So a year later he says, oh, they didn't close this out. Wait a minute, they're using the pole bar and they applied for it as an accessory apartment. And they never got the approvals for it. So it's simply a matter of cleaning up municipal records as far as that goes. It's perfectly logical on the record what happens. Okay, anything else? I think we can go ahead and try to address the simulant violation quickly, may I? Yes, go ahead. Okay, now a cause of action accrues is of course the court is familiar with when statute of limitations begins to run when the plaintiff knows or has reason to know of the wrongful acts upon which his claim is based. And the continuing violation doctrine provides a narrow exception to that. Second circuit recognizes it only in peculiar circumstances where there's a series of acts that are not necessarily actionable or at least not apparently wrongful individually, but collectively they constitute an unlawful practice or policy. And it usually arises in the context of workplace discrimination claims. It's rarely applied outside that, but it's well-established that a series of separate acts constituting discrete violations on their own does not give rise to new violation doctrine. That's true even if there's a serial violations directed toward the plaintiff. Well, in our case, we clearly have a number of separate discrete actions, which if they were wrongful at all are clearly wrongful on their own. I mean, the letter is saying that their town does not recognize the right to maintain access to the apartment, that there are code violations, the prosecution and justice court, the alleged denial of employment of his son and a rather daughter in the building department and refusal to appoint the son to the DBA. These are all separate discrete alleged violations. Simply isn't a case in which the continuing violation doctrine would apply. It seems to me the only thing that I see in the complaint that comes later are these eight visits. And so your argument is that they're not sufficiently connected because they're five years later, eight years later? Our argument is that continuing violation doctrine wouldn't apply at all because the alleged actions prior to three years before the complaint were separate discrete actions. They were not part of a single- Let's say it's not a continuing violation. Let's say it is itself the violation. So if they just say, you're entering my property out of retaliation, what would be your answer to that? Is that don't think that it's just not plausible because it's too far removed from the first amendment conduct. You have one minute, one minute. It is too far removed. It's not plausible. Also, it isn't factually fleshed out enough. The complaint's just this vague allegation that the town came on our property eight times, eight years after we made criticism. It's just not sufficient to tax what's there as an independent cause of action. All right, well, thank you. We'll hear from Mr. Felsenfeld. You have two minutes for rebuttal. Thank you so much, your honors. Mr. Kahn, I appreciate it. First of all, as to the notion about the stance of the property in the open application, that they've talked about it as of 2008, they had changed the zoning for that property back in 1997 as far as how they were taxing them. They decided that it was a multifamily dwelling. It was a factual indication that they believe this is a multifamily dwelling. They didn't do anything at that time to say, oh, by the way, we're taxing the multifamily dwelling, but we're coming after you. They didn't because at that time, Dennis Stanton and Willis Stevens were friends. And so Willis didn't see any reason to come after him. That's kind of underlay it. Once he was no longer a friend in Stevens' mind, that became part of the process and determination that they were gonna come after him. And after Mr. Stevens himself, he laid hands on Mr. Stanton in 2014, but following that, he continued to lay hands on him throughout the entire process, all the way up to the point that the Stanton has abandoned their property. And after those freestanding actions we see in 2018, they by themselves may be sufficient to continue a complaint because they by themselves were the final act that led to the Stanton having to abandon their property because they could do nothing to obtain a free title. They had a problem with their zoning that they could not have judged to be a single family dwelling or a multifamily dwelling. They were being taxed as if they were a multifamily dwelling and it was essentially unmarketable for them at that point. And as far as specific examples where there were no applications, we'll go back to example B in our complaint, paragraph 51 through 54 of the complaint and example C, 55 through 57 of the complaint, those are two properties, they didn't have any applications, they just kind of did stuff and it was okay. You're about out of time, but why don't you finish up? I'm fine, thank you so much. If you have any questions, your honors, I'm happy to answer. Yeah, I've got one question, which is why has the Stanton abandoned the property? My understanding is that they can't use the barn as a dwelling, but why does that render the whole property valuable? Yeah, they borrowed a tremendous amount of money during the course of this for litigation purposes, efforts to establish for the town officially to be able to get the variance and they were out of money, they were bankrupted and they either gonna be formally bankrupted or they had a lease and they left because there was nothing left for them to do, they couldn't sell it. It had more mortgage on it now than it had value, they were done. All right, thank you. We will reserve decision. We'll move on. Thank you so much, your honors, appreciate it. Thank you. Thank you. And the court is thanked once again and thank you so much, bye-bye. All right, you're very welcome.